**Joseph G. Sansone**
**Chief, Market Abuse Unit**
***Osman Nawaz**
**Alexander Vasilescu**
**Joshua Brodsky**
***David Bennett**
**Attorneys for Plaintiff**
**SECURITIES AND EXCHANGE COMMISSION**
New York Regional Office
Brookfield Place
200 Vesey Street, Suite 400
New York, New York 10281-1022
212-336-0178 (Vasilescu)
VasilsecuA@sec.gov

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | **COMPLAINT** |
| Plaintiff, | 21 Civ. _____ (    ) |
| -against- | |
| **PUNEET DIKSHIT,** | **JURY TRIAL DEMANDED** |
| Defendant. | |

Plaintiff Securities and Exchange Commission ("Commission"), for its Complaint against Defendant Puneet Dikshit ("Dikshit"), alleges as follows:

## SUMMARY

1. This action involves insider trading by Dikshit, a partner at a global management consulting firm ("Consulting Firm"), who through his work as a consultant learned confidential information about the impending acquisition of GreenSky, Inc. ("GreenSky") by The Goldman Sachs Group, Inc. ("Goldman"). Dikshit purchased speculative call options referencing GreenSky common stock ("GSKY") based on material nonpublic information that he misappropriated from his employer, Consulting Firm, and its client, Goldman.

2.     Dikshit worked as a lead partner on Consulting Firm's engagement by Goldman concerning the GreenSky acquisition. Without pre-clearing his trades with Consulting Firm as required, on September 13, 2021 and September 14, 2021, Dikshit directly or indirectly purchased out-of-the-money call options referencing GSKY that were set to expire on September 17, 2021 for $24,647, in an account in his name and in an account in the name of his spouse ("Individual 1").

3.     On September 15, 2021, Goldman announced that it had entered into a definitive agreement to acquire GreenSky in an all-stock transaction valued at approximately $2.24 billion, representing a per share price of $12.11. On September 15, 2021, GSKY closed at $11.90, an increase of 53% over its last sale price on September 14, 2021.

4.     Dikshit sold all of the call options referencing GSKY on September 15, 2021, realizing profits of over $450,000, a return on investment of approximately 1,829%.

## VIOLATIONS

5.     By virtue of the foregoing conduct and as alleged further herein, Defendant Dikshit violated Sections 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)], and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

6.     Unless Defendant Dikshit is restrained and enjoined, he will engage in the acts, practices, transactions, and courses of business set forth in this Complaint or in acts, practices, transactions, and courses of business of similar type and object.

## NATURE OF THE PROCEEDINGS AND RELIEF SOUGHT

7.     The Commission brings this action pursuant to the authority conferred upon it by Exchange Act Section 21(d) [15 U.S.C. § 78u(d)] and Exchange Act Section 21A(a) [15 U.S.C. § 78u-1(a)].

8.     The Commission seeks a final judgment: (a) permanently enjoining Defendant Dikshit from violating the federal securities laws and rules this Complaint alleges he has violated;

(b) ordering Defendant to pay civil money penalties pursuant to Exchange Act Section 21A [15 U.S.C. § 78u-1]; and (c) ordering any other and further relief the Court may deem just and proper.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over this action pursuant to Exchange Act Section 27 [15 U.S.C. § 78aa].

10. Defendant, directly and indirectly, has made use of the means or instrumentalities of interstate commerce or of the mails in connection with the transactions, acts, practices, and courses of business alleged herein.

11. Venue lies in this District under Exchange Act Section 27 [15 U.S.C. § 78aa]. Certain of the acts, practices, and courses of business constituting the violations of law alleged in this Complaint occurred within this District. Specifically, Dikshit worked in this District and executed trades in this District, and his purchases and sales of securities took place in this District.

## DEFENDANT

12. **Puneet Dikshit**, 40, resides in New York, New York. Dikshit is a partner at Consulting Firm, where he leads its North America Unsecured Lending and Digital Payments Service Lines, based in New York.

## OTHER RELEVANT INDIVIDUALS AND ENTITIES

13. **Individual 1** resides in New York, New York and is Dikshit's spouse.

14. **GreenSky, Inc.** is a Delaware corporation with its principal place of business in Atlanta, Georgia and is a publicly-traded consumer financing company. GreenSky's common stock is registered with the Commission pursuant to Section 12(b) of the Exchange Act and is traded on the NASDAQ under the ticker "GSKY."

15. **The Goldman Sachs Group, Inc.** is a Delaware corporation with its principal place of business in New York, New York and is a publicly-traded global financial institution. Goldman's

common stock is registered with the Commission pursuant to Section 12(b) of the Exchange Act and is traded on the New York Stock Exchange under the ticker "GS."

16. **Consulting Firm**, a global management consulting firm, is a New York corporation with its headquarters in New York, New York.

## TERMS USED IN THIS COMPLAINT

### Options

17. A stock option, commonly referred to as an "option," gives its purchaser-holder the option to buy or sell shares of an underlying stock at a specified price (the "strike price") prior to the expiration date. Options are generally sold in a "contract," which gives the option holder the opportunity to buy or sell 100 shares of an underlying stock.

18. A "call" option contract gives its purchaser-holder the right, but not the obligation, to purchase 100 shares of an underlying stock at a specified share price within a specific time period. Generally, the buyer of a call option anticipates that the price of the underlying security will increase during a specified amount of time.

### Internet Protocol Address

19. An "internet protocol address" or "IP address" is a unique number required for online activity conducted by a computer or other device connected to the Internet. Computers use the unique identifier to send data to specific computers on a network.

## FACTS

### I. DIKSHIT OWED A DUTY OF TRUST AND CONFIDENCE TO CONSULTING FIRM AND GOLDMAN

20. Dikshit owed a duty of trust and confidence to his employer, Consulting Firm, and his client, Goldman, and was obligated to maintain the confidentiality of information that he learned in connection with his employment and to refrain from trading on the basis of such information.

4

21.     Among other things, Dikshit signed numerous documents, including a "Proprietary and Confidential Information Agreement," a letter agreement when he was elected to be a partner of Consulting Firm, and an "Amended and Restated Agreement Among Common Shareholders," acknowledging that he would receive nonpublic information during the course of his employment at Consulting Firm and agreeing that he not use or disclose confidential information, except as may be necessary in the good faith performance of his duties at Consulting Firm.

22.     In addition, Consulting Firm's client, Goldman, expected that Consulting Firm and its personnel would treat information learned through their work for Goldman as confidential.

23.     Goldman's expectations of confidentiality with Consulting Firm and its personnel were memorialized in at least a Master Consulting Agreement, whereby Consulting Firm agreed to not use nonpublic information provided by Goldman for any purpose other than to provide services for the benefit of Goldman.

### II.     DIKSHIT CONCEALED HIS PERSONAL SECURITIES TRADING FROM CONSULTING FIRM

24.     As part of Dikshit's employment, he executed additional documents including with respect to his clearance with Consulting Firm of any personal securities trading.

25.     On May 29, 2012, Dikshit confirmed that he read Consulting Firm's "Personal Investments Policy" ("Investments Policy") and certified that he would comply with its terms.

26.     The Investment Policy generally required that employees pre-clear all purchases and sales of publicly-traded securities for themselves and members of their household.

27.     Dikshit did not pre-clear any of the trades in GSKY securities discussed below through Consulting Firm's Personal Investments Preclearance System.

### III. DIKSHIT MISAPPROPRIATED MATERIAL NONPUBLIC INFORMATION FROM CONSULTING FIRM AND GOLDMAN TO TRADE IN ADVANCE OF THE ANNOUNCEMENT OF THE GREENSKY ACQUISITION

28. From as early as late 2019 through present, Dikshit was part of a team at Consulting Firm that provided Goldman with consulting services relating to point-of-sale lending generally and GreenSky specifically.

29. On August 6, 2019, GreenSky publicly announced that it was exploring potential strategic alternatives. Following discussions between representatives from GreenSky's financial advisor and representatives from Goldman, Goldman and GreenSky entered into a non-disclosure agreement on September 23, 2019 ("September 2019 NDA").

30. On or around mid-November 2019, representatives from Goldman reached out to representatives from Consulting Firm, including Dikshit, to discuss a "point of sale transaction." By late-November, a representative from Consulting Firm, cc'ing Dikshit, sent a draft engagement letter to a Goldman representative regarding "Project Glacier."

31. "Project Glacier" was the code name for Goldman's potential acquisition of GreenSky.

32. Goldman and Consulting Firm executed an engagement letter dated December 8, 2019 ("December 2019 Engagement Letter"), setting forth that Consulting Firm would be assisting or advising Goldman regarding a possible transaction with "GLACIER" and attaching the September 2019 NDA, with Consulting Firm agreeing, in sum or substance, to treat any materials received as confidential, consistent with the obligations set forth in the September 2019 NDA.

33. After execution of the December 2019 Engagement Letter, representatives from Goldman wall-crossed representatives from Consulting Firm, including Dikshit, providing them access to a data room containing materials needed for Goldman to perform due diligence on

GreenSky. Over the next several weeks, until at least January 2020, representatives from Consulting Firm consulted with representatives from Goldman regarding a potential acquisition of GreenSky.

34. In March 2020, representatives from Goldman informed their counterparts from GreenSky that Goldman wanted to cease merger discussions. And, on August 10, GreenSky publicly announced that it had concluded its evaluation of potential strategic alternatives, without any agreement.

35. Thereafter, representatives from Goldman and GreenSky remained in periodic contact, and on May 29, 2021, discussions regarding Goldman's potential acquisition of GreenSky began again. On June 16, 2021, Goldman's and GreenSky's legal representatives negotiated an extension of the September 2019 NDA. Goldman submitted a written acquisition proposal to GreenSky on July 2 and a revised written acquisition proposal on July 15, which on July 19, GreenSky indicated was insufficient.

36. While representatives from GreenSky and Goldman were engaged in renewed discussions, representatives of GreenSky and another interested party ("Purchaser 2") were also discussing a potential transaction. Purchaser 2 signed a non-disclosure agreement on July 20, and submitted a written acquisition proposal to GreenSky on July 22.

37. On August 4, a representative from GreenSky informed a representative from Goldman of the presence of another interested purchaser and the need for Goldman to quickly re-reengage if it was still interested in the acquisition, a message that was repeated on August 12.

38. During the summer of 2021, Consulting Firm had been providing some consulting services to Goldman with respect to point-of-sale lending, including continued discussions about GreenSky. On August 6, Goldman and Consulting Firm formalized this relationship by executing an engagement letter for such consulting work. Soon thereafter, on August 12, representatives from

Goldman requested that representatives from Consulting Firm, including Dikshit, put together a short document regarding Goldman's potential acquisition of GreenSky.

39. Also on August 6, Dikshit purchased 160 GSKY call option contracts with a $10 strike price and a December 17 expiration date.

40. On August 15, a representative from Goldman told a representative from GreenSky that Goldman would be restarting due diligence of GreenSky, with a series of due diligence meetings to be held on Wednesday, August 18 in Atlanta, Georgia.

41. On August 16, a representative from Consulting Firm sent an internal e-mail to Dikshit and others recounting multiple calls from the preceding days, noting that "[o]n Glacier – looks like they are moving forward, after a call between [a representative from Goldman] and [a representative from GreenSky]" and that "[t]hey have a meeting coming up with Glacier team in Atlanta on Wednesday."

42. On August 20, Dikshit sent an internal e-mail to his Consulting Firm colleagues, providing updates on multiple recent telephone calls, where, among other things, he heard that "they think there is potentially another buyer so want to move fast." Later, on August 22, following Dikshit's e-mail, another representative from Consulting Firm confirmed that he had spoken with a representative from Goldman a few times and that "there is a formal process now" and "[t]hey have 3 weeks to get to a best and final offer."

43. On August 23, representatives from GreenSky's financial advisor contacted representatives from Goldman and Purchaser 2, requesting updated written acquisition proposals on September 3. Goldman and Purchaser 2 submitted written acquisition proposals on that date. Both Goldman and Purchaser 2 submitted final written acquisition proposals on September 8. On September 9, representatives from GreenSky's financial advisor informed representatives from

Goldman that GreenSky was prepared to move forward with them contingent upon certain conditions.

44. Also on August 23, Dikshit purchased 3 GSKY call option contracts with a $7.50 strike price and a December 17 expiration date.

45. On September 2, Dikshit purchased 15 GSKY call option contracts with a $7.50 strike price and a January 21, 2022 expiration date.

46. At 9:54 p.m., on September 9, a representative from Consulting Firm sent an internal e-mail with the subject "Glacier" to Dikshit and one other Consulting Firm colleague, informing them that "[t]hey have unofficially heard that they have won the deal" and "[l]ikely signing on Monday," *i.e.*, September 13. Dikshit responded 30 minutes later, at 10:24 p.m.: "This is great news! Should we get 30 mins tomorrow to discuss?"

47. At 11:22 p.m., on September 9, Dikshit entered an order to purchase 3 GSKY call option contracts with a $10 strike price and an October 15 expiration date, which was executed on September 10. On September 10, he also purchased 7 GSKY call option contracts with a $7.50 strike price and a December 17 expiration date.

48. As of September 10, Dikshit was holding 188 GSKY call option contracts with expiration dates of October 15, 2021, December 17, 2021, and January 21, 2022 and strike prices of $7.50 and $10.

49. That same day, representatives from Goldman conducted interviews with GreenSky's merchants, to which Dikshit had been invited. This was a key final due diligence step in the acquisition of GreenSky. That evening, a representative from Goldman shared her summaries of those interviews with Dikshit, requesting his "thoughts/observations from the calls."

50. A day later, September 11, Dikshit sent a representative from Goldman an e-mail with the subject "Project Glacier Integration Planning," attaching a "one-pager that highlights

workstreams where we are proposing to support you." The next day, September 12, a representative from Consulting Firm, cc'ing Dikshit, sent to Goldman the "full proposal document," entitled "Post Acquisition integration planning – Glacier." That evening, a representative from Consulting Firm sent an internal e-mail to Dikshit and others indicating that Goldman intended to hire Consulting Firm to work on the integration of GreenSky into Goldman and that representatives of Goldman "[w]anted to sit down with us to detail out what needs to happen."

51. On September 13, at 10:00 a.m., representatives from Consulting Firm, including Dikshit, and Goldman had a call to "[d]iscuss Glacier Integration," and then, from 2:00 to 3:00 p.m., representatives from Consulting Firm met to "[d]iscuss Glacier integration," where Dikshit was listed as a "Required Attendee[]." Later, at 3:02 p.m., a representative from Consulting Firm e-mailed a representative from Goldman, cc'ing Dikshit, with the subject "Confirmation of Glacier Support," stating:

> Excited to be partnering again on this! To kickoff our formal support (e.g., team staffing, etc.) we need a note (response to this email is fine) that we are confirmed to support on Glacier - through the streams outlined in our discussion today.

The representative from Goldman provided her confirmation at 5:01 p.m.

52. Starting at 3:20 p.m. on September 13, using an IP address associated with Consulting Firm, Dikshit entered orders to sell 3 GSKY call option contracts with a $10 strike price and an October 15 expiration date, and 10 GSKY call option contracts with a $7.50 strike price and a December 17 expiration date. These orders were executed between 3:21 p.m. and 3:39 p.m. for proceeds of approximately $2,100.

53. At 3:41 p.m. on September 13, using an IP address associated with Consulting Firm, Dikshit purchased 212 GSKY call option contracts with a $10 strike price and a September 17 expiration date at a cost of approximately $2,100. These highly speculative call option contracts

would expire worthless if by September 17 the price of GSKY did not increase approximately 13% from its September 13 closing price of $8.85 per share to the strike price of $10 per share.

54. That night, $10,000 was transferred into a brokerage account in the name of Individual 1. At 7:51 p.m., Dikshit, directly or indirectly, placed an order to purchase 150 GSKY call option contracts with a $10 strike price and a September 17 expiration date in that account, which was executed between 9:30 a.m. and 9:34 a.m. on September 14.

55. On September 14, a Special Committee of Goldman's Board approved the acquisition of GreenSky, with Goldman's Board approving the transaction later that day. After that, Goldman and GreenSky executed the merger agreement and related documents.

56. Also on September 14, Dikshit transferred $10,000 into his brokerage account. He liquidated 160 GSKY call option contracts with a $10 strike price and a December 17 expiration date and 15 GSKY call option contracts with a $7.50 strike price and a January 21, 2022 expiration date for proceeds of approximately $13,000. He purchased 2,269 more GSKY call option contracts with a $10 strike price and a September 17 expiration date at a total cost of approximately $21,000.

57. On September 15, before market open, Goldman announced that it had entered into a definitive agreement to acquire GreenSky in an all-stock transaction valued at approximately $2.24 billion, which based on the closing share price of Goldman common stock as of September 14, represented a per share price of $12.11.

58. On September 15, GSKY shares closed at $11.90 per share, an increase of $4.13 per share (or approximately 53 percent) from the prior trading day's close of $7.77 per share.

59. After the pre-market announcement, between 9:34 a.m. and 9:35 a.m., Dikshit, using an IP address associated with Consulting Firm, placed orders to liquidate the 2,481 GSKY call option contracts he had purchased in his account on September 13 and 14, which he had acquired at

11

a cost of approximately $23,100.  Those orders were executed between 9:35 a.m. and 9:42 a.m. for proceeds of $449,128.

60. At 9:58 a.m., Dikshit, using an IP address associated with Consulting Firm, placed an order to liquidate the 150 GSKY call option contracts he had purchased in the account of Individual 1, which he had acquired at a cost of $1,500.  That order was executed at 9:58 a.m. for proceeds of $26,250.

61. In total, Dikshit realized profits of more than $450,000 from his insider trading in GSKY options, a return on investment of approximately 1,829%.

62. Later that day, a representative from Consulting Firm sent an internal e-mail including a link to an article announcing Goldman's acquisition of GreenSky, commenting that Dikshit and another colleague "have been in the middle of this for the last 2 years."

63. Dikshit knew or was reckless is not knowing that the information he had obtained from Consulting Firm and Goldman concerning the acquisition of GreenSky was material and nonpublic, and that he owed a duty to Consulting Firm and Goldman to keep that information confidential and to refrain from trading on it.

64. By trading in GSKY securities on the basis of material nonpublic information that he had obtained from Consulting Firm and Goldman, Dikshit breached a duty of trust or confidence to Consulting Firm and Goldman.

## CLAIM FOR RELIEF
**Violations of Exchange Act Section 10(b) and Rule 10b-5 Thereunder**

65. The Commission re-alleges and incorporates by reference here the allegations in paragraphs 1 through 64.

66. Defendant, directly or indirectly, singly or in concert, in connection with the purchase or sale of securities and by the use of means or instrumentalities of interstate commerce, or the mails, or the facilities of a national securities exchange, knowingly or recklessly has (i) employed

one or more devices, schemes, or artifices to defraud, (ii) made one or more untrue statements of a material fact or omitted to state one or more material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, and/or (iii) engaged in one or more acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons.

67. By reason of the foregoing, Defendant, directly or indirectly, singly or in concert, has violated and, unless enjoined, will again violate Exchange Act Section 10(b) [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that the Court enter a Final Judgment:

### I.

Permanently enjoining Dikshit from violating, directly or indirectly, Exchange Act Section 10(b) [15 U.S.C. § 78j(b)], and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5];

### II.

Ordering Defendant to pay civil monetary penalties under Exchange Act Section 21A [15 U.S.C. § 78u-1]; and

### III.

Granting any other and further relief this Court may deem just and proper.

Dated: New York, New York
November 10, 2021

_____
Alexander Vasilescu
Joseph G. Sansone
*Osman Nawaz
Joshua Brodsky
*David Bennett
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
Brookfield Place
200 Vesey Street, Suite 400
New York, New York 10281-1022
212-336-0178 (Vasilescu)
VasilsecuA@sec.gov

*Not admitted in the S.D.N.Y.